UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ESTATE OF JOHNEL MOORE,

      Plaintiff,

      v.                                                                Case No. 06-C-0321

JESSY DIXON and
JESSY DIXON MINISTRIES,

      Defendants.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE**

### I. BACKGROUND

This action was commenced on March 14, 2006, when the plaintiff, the Estate of Johnel Moore (the "Estate"), filed a complaint naming Jessy Dixon ("Dixon") and Jessy Dixon Ministries as defendants. The complaint alleges that the defendants "in breach of contract, by fraud, by negligence, by negligent misrepresentation, in bad faith, against the principles of equity, or through a breach of fiduciary duty, solicited donations from Johnel Moore under the false representation that the defendants were operating a 'charitable' organization." (Compl. at ¶ 5.) On April 19, 2006, the defendants filed a motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(3), alleging that venue is improper in the Eastern District of Wisconsin. On July 27, 2006, the plaintiff filed its response to the motion to dismiss. On September 11, 2006, the defendants filed their reply, in which they request that the court transfer this action to the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a), rather than dismiss the action without prejudice. Such being the case, the defendants' motion to dismiss pursuant to Rule 12(b)(3) is now fully briefed and ready for

resolution. For the following reasons, the defendants' motion to dismiss will be denied. Furthermore, because the court finds venue in this district to be proper, this action will not be transferred to the Northern District of Illinois pursuant to 28 U.S.C. 1406(a).

A review of the complaint, the affidavits submitted by both parties in support of their respective positions, and the deposition transcript of Mr. Jessy Dixon reveal that the following are the facts that are relevant to the disposition of the defendants' motion to dismiss for improper venue.

The Estate of Johnel Moore is a probate estate subject to the jurisdiction of the probate court of Ozaukee County, Wisconsin. The defendant, Jessy Dixon, resides in Crete, Illinois, and Jessy Dixon Ministries, to the extent that it is a separate entity from Mr. Jessy Dixon himself, is also located in Crete, Illinois. The plaintiff's complaint alleges that venue is based upon Title 28 U.S.C. § 1391(b)(2). Yet, given that this action has been brought based upon this court's diversity jurisdiction, venue cannot be based upon section 1391(b)(2), but rather, must be based upon section 1391(a)(2).

According to the complaint, Johnel Moore made the following charitable donations to Jessy Dixon Ministries prior to her death, relying upon the representations of the defendants that the donations were charitable:

```
8/10/2004      $25,000
9/01/2004      $100,000
9/19/2004      $10,000
9/24/2004      $300,000
2/08/2005      $251,700
5/26/2005      $22,0000
Total:         $708,700
```

(Compl. ¶ 6.) The complaint further alleges that the defendants sent a letter to Johnel Moore at her residence in Mequon, Wisconsin and that this letter, which is undated, would indicate to a reasonable

2

person that the funds were being solicited and accepted by the defendants as tax deductible donations to a charitable organization. (Pl.'s Resp., Ex. 9 at 2.) The defendants also sent a letter to Johnel Moore at her residence in Mequon, Wisconsin, in response to an inquiry from Moore's accountant regarding the tax exempt status of Jessy Dixon Ministries. (Compl, Ex. B.) According to the plaintiff, this letter "confirm[ed] the contributions as tax deductible donations to a charitable organization." (Compl. ¶ 7.) Based upon the defendants' alleged misrepresentations, the Estate has allegedly suffered a cash loss in the amount of $708,700, as well as "unknown tax losses for taking charitable deductions" on the donations Johnel Moore made to the defendants. (Compl. at ¶ 9.)

Since the 1980s, Dixon has been a gospel music recording artist. He has performed at concerts throughout the United States as well as abroad, and for the past ten years he has toured with the Gaithers, an entertainment enterprise that produces gospel music concerts throughout North America. (Dixon Supp. Aff. ¶ 2.) In 1980, Dixon started a prayer group in Chicago and such group intended to become a church. For that purpose, Dixon was ordained as a Pentecostal minister by Calvary Ministries Inc. International in 1982. To that same end, Dixon organized Jessy Dixon Ministries, Inc. as an Illinois nonprofit corporation in 1981. However, given that his gospel music recording career was demanding more and more of his time for travel and recording, Dixon never proceeded with his plan to form a church and thus, Jessy Dixon Ministries never became active, never received any income, and never filed any tax returns. (Dixon Supp. Aff. ¶ 3.)

Dixon first met Johnel Moore in 2002 during the intermission of one of Dixon's gospel music concerts. Typically, Dixon meets and greets fans during concert intermissions. Although Dixon avers that the concert at which he first met Moore was not in Wisconsin, he does not specify the state in which this concert was held. Moore attended Dixon's concerts and she and Dixon became casual

3

acquaintances. Dixon avers that he never discussed Jessy Dixon Ministries with Moore, but she may have heard of Jessy Dixon Ministries because there may have been some old business cards at one of Dixon's concerts bearing that name. (Dixon Supp. Aff. at ¶ 6.)

After Dixon received Moore's first check for $10,000, Dixon called Moore to thank her for the gift, and the two became close friends rather than casual acquaintances. Dixon and Moore spoke frequently by telephone. Dixon received a second check payable to Jessy Dixon Ministries for $25,000 at his home, and Moore made an additional four "gifts" of money by wire transfer. Dixon received a letter dated March 23, 2005 from William Appel, Moore's accountant. Dixon did not understand the letter and gave it to his accountant, Jesse Ivy ("Ivy"). Ivy prepared a letter dated April 28, 2005 in response to Appel's letter, which Dixon signed and gave to his staff to be mailed. (Dixon Supp. Aff. ¶ 9.)

Dixon has performed at three concerts in Wisconsin. Dixon performed on September 26, 2003, in Green Bay, Wisconsin, on October 25, 2003, in Milwaukee, Wisconsin, and on April 9, 2005 in Green Bay, Wisconsin. Dixon also visited Johnel Moore at her home in Mequon, Wisconsin on September 10, 2005. (Dixon Supp. Aff. ¶ 10.) According to Dixon, neither he nor Jessy Dixon Ministries does business in Wisconsin and neither of the defendants own property in Wisconsin. (Dixon Aff. ¶ 3.) Furthermore, Dixon avers that the funds which are the subject of this action were received by the defendants in Illinois and are now located in Illinois. (Dixon Aff. ¶ 5.)

## II. DISCUSSION

For the purposes of a motion to dismiss for improper venue pursuant to Rule 12(b)(3), the court must take all allegations in the complaint as true unless contradicted by the defendants' affidavits. *Interlease Aviation Investors v. Vanguard Airlines*, *Inc.*, 262 F. Supp. 2d 898, 913 (N.D.

4

Ill. 2003). However, if there are disputed facts, "[t]he court must resolve all factual [disputes] and draw all reasonable inferences in the plaintiff's favor." *Id.*; *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988). Furthermore, once a defendant has sought dismissal on the basis of improper venue, the plaintiff bears the burden of proving that venue is proper. *Interlease*, 262 F. Supp. 2d at 913.

Where jurisdiction of an action is based solely on diversity, venue is determined in accordance with the requirements of 28 U.S.C. § 1391(a). Section 1391(a) provides that

> [a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Here, both of the defendants reside in the State of Illinois and in the Northern District of Illinois. Accordingly, pursuant to section 1391(a)(1), venue is proper there. However, simply because venue is proper in the Northern District of Illinois, does not mean that venue cannot also be proper in the Eastern District of Wisconsin. Indeed, venue may be proper in multiple districts. *Fogelson v. Iatrides*, 2000 WL 631293 at *3 (N.D. Ill. 2000).

The Estate seems to argue that venue is proper in the Eastern District of Wisconsin based upon section 1391(a)(3) because the defendants are subject to personal jurisdiction here. However, the plaintiff's argument regarding personal jurisdiction and section 1391(a)(3) is misplaced. This is because, section 1391(a)(3) *only* applies "if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3). And, as previously stated, this action could have been brought in the Northern District of Illinois pursuant to section 1391(a)(1). Such being the case, the plaintiff

5

cannot rely upon section 1391(a)(3). Thus, the only remaining question is whether venue is proper in the Eastern District of Wisconsin based upon section 1391(a)(2).

To reiterate, for venue to be proper in this district based upon section 1391(a)(2), either a substantial part of the events or omissions giving rise to the claim must have occurred in this district, or a substantial part of the property that is the subject of the action must be situated in this district. The defendants argue that a substantial part of the property that is the subject of this action is not located in the Eastern District of Wisconsin. The court agrees. The funds which are the subject of this action were received by the defendants in Illinois, and it appears that that is where the funds are now located, that is, if there is anything left of them. The defendants also argue that venue cannot be proper in the Eastern District of Wisconsin because a substantial part of the events or omissions giving rise to the plaintiff's claims did not occur in this district.

The test of determining whether a "substantial part" of the events or omissions giving rise to a claim occurred in a particular district is more of a qualitative, rather than quantitative inquiry. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005). Indeed, the "substantiality" of the events which occurred in a particular district is determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum district, not by simply adding up the number of contacts. *Id.* The court must look to the entire sequence of events underlying the claim, rather than a single action which may have triggered the claim. *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38 (1st Cir. 2001). And, when determining whether a substantial part of the events giving rise to the claim occurred in a particular district, the court must focus on the activities of the defendant, not those of the plaintiff. *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1015 (E.D. Wis. 2000).

6

Furthermore, for events to be considered "substantial" under the statute, it is sufficient for the plaintiff to establish that the events occurring in the forum district "'were part of the historical predicate for the instant suit.'" *Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill.2002) (quoting *Uffner*, 244 F.3d at 42). Yet, the test is not whether a *majority* of the activities pertaining to the action were performed in a particular district, but rather, whether a substantial portion of the activities giving rise to the action occurred in the district. *TruServ v. Neff*, 6 F. Supp.2d, 790 (N.D. Ill. 1998). After all, "'[t]here may be several districts that qualify as a situs of such "substantial" activities . . . [however] [i]f the selected district's contacts are "substantial," it should make no difference that another's are more so, or the most so.'" *Rich-Mix Products, Inc. v. Quikrete Companies, Inc.* 1999 WL 409946 at *1 (N.D. Ill. 1999) (quoting David Siegel, Commentary on 1990 Revision of Subdivisions (a), (b), and (c), 28 U.S.C. § 1391 (West Supp.1991)). Finally, in order for events to be deemed "substantial" under the statute, they must have a "close nexus" to the alleged claim. *Daniel*, 428 F.3d at 433 (stating that when events or omissions within the district "bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue").

Following these standards, numerous courts in this circuit which have examined " venue under section 1391(a)(2) in misrepresentation and fraud cases have held that venue is proper in the district to which a document containing the misrepresentation at issue was sent." *Mercantile Capital Partners v. Agenzia Sports, Inc.*, 2005 WL 351926 at *5 (N.D. Ill. 2005); *see also Interlease*, 262 F. Supp. 2d at 913 ("The requirements of § 1391(a)(2) 'may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient

7

relationship between the communication and the cause of action.'") (quoting *Fogelson*, 2000 WL 631293, at *3) (internal quotations omitted).

> For example, in *Fogelson v. Iatrides*, an Illinois plaintiff brought an action for fraudulent misrepresentation against defendants from Indiana. The plaintiff alleged that the defendants misrepresented their interest in selling him a parcel of land in Indiana. The defendants moved to dismiss on the grounds that a substantial portion of the events giving rise to the claim did not occur in Illinois. In rejecting this contention, the court noted that "1392(a) may be satisfied by a communication transmitted to . . . the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." The court thus concluded that venue was proper because the documents containing the alleged misrepresentation, which were the center of the plaintiff's claim, were sent to the plaintiff in Illinois.

*Mercantile Capital Partners*, 2005 WL 351926 at *5 (citations omitted). Similarly, in *Mercantile Capital Partners*, the plaintiff brought claims for fraud and misrepresentation against the defendants, alleging that the defendants defrauded the plaintiff in the sale of a hockey team. *Id.* at *5. The defendants, residents of Minnesota, allegedly sent false documents to the plaintiff in Illinois, and also allegedly mailed a letter to the plaintiff in Illinois which contained misstatements regarding the hockey team's assets. *Id.* Furthermore, the plaintiff alleged that "[i]n reaching its decision to purchase the [team], it relied on [the defendants'] misrepresentations in [Illinois]." *Id.* Consequently, the court found that venue was proper in Illinois.

Here, the Estate alleges that the defendants made misrepresentations which led Ms. Johnel Moore to (1) make donations to Mr. Jessy Dixon and/or Jessy Dixon Ministries believing such donations to be charitable donations, and (2) deduct the amount of such donations from her taxes as charitable contributions. As the defendants correctly note, the Estate has not specifically identified the misrepresentations which it believes initially led Moore to make donations to Jessy Dixon Ministries, believing such to be a charitable organization and thus, her donations to be charitable

8

donations. The Estate, however, has specifically identified two letters in which the defendants allegedly make misrepresentations which led Moore, and/or her account, to believe that the donations that she had made to Jessy Dixon Ministries and/or Jessy Dixon were tax deductible charitable contributions.

The first letter, which is undated, was signed by the Reverend Jessy Dixon and sent to Johnel Moore at her home in Mequon, Wisconsin. (Pl.'s Resp., Ex. 9 at 2.) In this letter, Dixon thanks Ms. Moore for her wonderful gift of $400,000 and states that the funds will be used in furtherance of his ministry. (Pl.'s Resp., Ex. 9 at 2.) The second letter, dated April 28, 2005, was also sent to Johnel Moore at her residence in Mequon, Wisconsin in response to an inquiry from Moore's accountant regarding the tax exempt status of Jessy Dixon Ministries. (Compl, Ex. B.) This letter was printed on Jessy Dixon Ministries letterhead and was signed by the Reverend Jessy Dixon. In this letter, Jessy Dixon thanks Ms. Moore for her wonderful gift of $435,000 and states that "[n]o goods or services were provided by me or my ministry in connection with these contributions. No other organization will benefit from this contribution. These funds will be used in furtherance of my ministry." (Compl. Ex. B.)

Simply stated, in this case, the plaintiff has alleged several communications which were sent to the Eastern District of Wisconsin, and those communications have a sufficient relationship to the plaintiff's causes of action to support venue in this district. As previously stated, the plaintiffs allege that the defendants sent the aforementioned letters to Ms. Moore at her residence in Wisconsin, and in both of those letters the defendants made misrepresentations regarding the nature of Ms. Moore's donations to the defendants. As a result of these letters, Ms. Moore and/or her account, Mr. Appel, believed the donations to be charitable donations, and as such, wrote them off as charitable

9

deductions on Ms. Moore's tax return. To reiterate, courts examining venue under section 1391(a)(2) in misrepresentation and fraud cases have held that venue is proper in the district to which a document containing the misrepresentation at issue was sent. *Mercantile Capital Partners*, 2005 WL 351926 at *5. Here, the plaintiff alleges that the defendants sent two documents containing misrepresentations to this district and that Ms. Moore and/or her accountant relied upon these misrepresentations to their detriment. Such being the case, I am persuaded that the plaintiff's receipt of and reliance upon the aforementioned letters here in the Eastern District of Wisconsin are sufficiently connected to the plaintiff's causes of action so as to render venue proper in this district.

The defendants argue that because the majority of Ms. Moore's "donations" to Jessy Dixon Ministries and/or Mr. Jessy Dixon pre-dated the April 28, 2005 letter, Ms. Moore could not have relied upon the alleged misrepresentation in the letter when making the donations, and thus, the receipt of the letter cannot be sufficiently related to the plaintiff's claims. (Reply Br. at 13.) I disagree. As previously noted, the plaintiff's complaint does not simply allege that Ms. Moore relied upon the defendants' misrepresentations when making the "donations." Rather, the complaint alleges that Ms. Moore and/or her accountant also relied upon the defendants' misrepresentations when she wrote off her donations to the defendants as tax deductible charitable donations. And, after examining the overall nature of the plaintiff's claims, I am persuaded that the plaintiff's receipt of and reliance upon the aforementioned letters in Wisconsin were indeed part of the "historical predicate" of all of the plaintiff's claims.[1] *Master Tech Prods., Inc.*, 181 F. Supp. 2d at 914. Indeed,

---

[1] As the defendants correctly note, the Estate has not yet identified the nature of the "contract" upon which its breach of contract claim is based. Nor has the Estate identified what relationship or agreement gave rise to a fiduciary duty between the defendants and Ms. Moore. Yet, based upon the allegations set forth in the complaint, and drawing all reasonable inferences from such allegations in the plaintiff's favor, I am persuaded that the plaintiff's receipt of and reliance

10

Ms. Moore's receipt of and her and/or her accountant's reliance upon the aforementioned letters bears a close nexus to the plaintiff's claims. *Daniel*, 428 F.3d at 433.

Relying upon cases interpreting Wisconsin's long-arm statute, the defendants also argue that "a letter sent from another state to Wisconsin is not an act within Wisconsin," and thus, venue is improper here because the receipt of the letters in Wisconsin do not constitute "events" occurring in this district. (Reply Br. at 11.) Yet, whether a letter sent from another state to Wisconsin is considered an act within Wisconsin pursuant to Wisconsin's long-arm statute is of no moment. This is because the determination of whether substantial parts of the events giving rise to the plaintiff's claims occurred in a particular district is a federal issue whose answer depends solely on federal law. *PKWare*, 79 F. Supp. 2d at 1015 (citing *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183 n.15 (1979)). And, as previously stated, numerous federal courts interpreting the federal venue statute, 28 U.S.C. § 1391, have held that "the requirements of § 1391(a)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action. *Interlease*, 262 F. Supp. 2d at 913 (internal quotations omitted); *see also Hispec Wheel & Tire, Inc. v. Tredit Tire & Wheel*

---

upon the aforementioned letters here in the Eastern District of Wisconsin are sufficiently connected to the plaintiff's causes of action for breach of contract and breach of fiduciary duty so as to render venue proper in this district. Indeed, I do not see how the letters could not have been a part of the "historical predicate" of these claims. And, even assuming, *arguendo*, that venue is improper in this district with respect to the breach of contract and breach of fiduciary duty claims, I would still find venue to be proper over all of the plaintiff's claims pursuant to the "pendent venue" doctrine. This is because the plaintiff's misrepresentation claim is the plaintiff's primary claim and the breach of contract and breach of fiduciary duty claims share a common nucleus of operative fact with the plaintiff's misrepresentation claim. *See* 15 Wright & Miller, *Federal Practice & Procedure*, § 3808 (2006) (stating that "many courts follow the rule that if venue is proper for the 'principal' or 'primary' claim, then venue is proper for any subsidiary claim that shares a common nucleus of operative fact with the primary claim").

*Co., Inc.*, 2005 WL 1983846 at *7 (N.D. Ind. 2005) (finding venue proper in plaintiff's home state for fraud claim because plaintiff's reliance and detrimental effects of reliance occurred there); *Print Data Corp. v. Morse Fin., Inc.*, 2002 WL 1625412, at *6 (D. N.J. 2002) (venue appropriate under section 1391(a)(2) in district where fraudulent statements were sent and where the plaintiffs relied on the statements).

    To reiterate, here the plaintiff has identified two communications sent by the defendants to this district which allegedly contained misrepresentations upon which Ms. Moore and/or her accountant relied. I am persuaded that there is a sufficient relationship between these two communications, which the defendants directed at Wisconsin, and the plaintiff's causes of action. Thus, a substantial part of the events giving rise to the plaintiff's claims occurred in this district and venue is proper. Indeed, "in most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial, [however,] it does not offend notions of fairness or convenience to hale defendants into the very forum where most (if not all) of their allegedly fraudulent conduct was directed." *Print Data Corp.*, 2002 WL 1625412, at *6 (internal quotations omitted).

    Consequently, and for all of the foregoing reasons, the defendants' motion to dismiss for improper venue will be denied. Additionally, because this court has found venue to be proper in this district, the court cannot transfer this action to the Northern District of Illinois pursuant to section 1404(a).

    **NOW THEREFORE IT IS ORDERED** that the defendants' motion to dismiss for improper venue be and hereby is **DENIED**.

**SO ORDERED** this 27th day of October 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

13