UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ESTATE OF JOHNEL MOORE,

    Plaintiff,

    v.                                    Case No. 06-C-0321

JESSY DIXON and
JESSY DIXON MINISTRIES,

    Defendants.

**DECISION AND ORDER GRANTING PLAINTIFF'S RULE 7.4 EXPEDITED
NON-DISPOSITIVE MOTION FOR OTHER RELIEF**

## I. BACKGROUND

On November 27, 2007, the plaintiff, the Estate of Johnel Moore ("the Estate"), filed a Civil Local Rule 7.4 Expedited Non-Dispositive Motion for Other Relief, moving the court to strike deposition corrections submitted by Lisa Conner ("Conner"), the bookkeeper and secretary to defendants Jessy Dixon ("Dixon") and Jessy Dixon Ministries ("JDM"). Further, the Estate seeks relief from the December 14, 2007 deadline for filing a response to the defendants' Motion for Summary Judgment, filed on October 19, 2007. On November 28, 2007, the Estate filed a letter with the court providing the court with supplemental authority addressing its motion. On December 4, 2007, the defendants filed their response in opposition to the Rule 7.4 motion. Rule 7.4 does not permit replies, absent leave of the court. Because no such leave was requested, the motion is fully briefed and ready for resolution.

## II. FACTS

On March 14, 2006, the Estate filed a complaint against Dixon and JDM alleging that the defendants "in breach of contract; by fraud; by negligence; by negligent misrepresentation; in bad faith, against the principles of equity, or through a breach of fiduciary duty; solicited donations from Johnel Moore under the false representation that the Defendants were operating a 'charitable' organization." (Compl. ¶ 5.) The complaint claims that the late Mrs. Moore donated $708,700 to JDM between August 10, 2004 and May 26, 2005, relying on Dixon's representations that the donations were charitable. (Compl. ¶¶ 6,7.) The Estate alleges that, to the extent that Dixon once had a charitable organization, such organization was dissolved by the State of Illinois in 1993 and that Mrs. Moore's donations were used by Dixon to purchase a luxury automobile and for other non-charitable purposes. (Compl. ¶¶ 5,7.)

On October 22, 2007, Conner testified under oath during a deposition in this case. (Mot. ¶ 1.) She testified on at least ten (10) different occasions during her deposition that she was Dixon's employee. (Mot. ¶ 1.) At some time after the deposition, Conner reviewed the transcript of her deposition testimony and wished to "correct" portions of that testimony. (*See* Mot. ¶ 1; Ex. 2.) Specifically, she wished to replace her testimony that she is Dixon's employee, with testimony that she is an independent contractor working for Dixon. She subsequently submitted the following deposition "corrections" to the Estate in the form of a signed errata sheet:[1]

---

[1] Conner submitted one other correction, purporting to state a change to her testimony at page 15, line 2 of the transcript. However, page 15, line 2 of the transcript contains a statement made by Attorney Demet and not an answer to a question posed by him. To the extent that it matters, the change appears to be of the same type as the others – an attempt to change a statement indicating that Conner was an employee of Dixon's to a statement indicating that she was an independent contractor.

Q: Well, I'm going to represent to you that on the website, it says under Jessy Dixon Ministries that you're an employee?

A: Yes. Correction: No. I'm treated as an independent contractor.

(Ex. 1, 15:11-12.) (Ex. 2, 2.)

Q: But you're an employee of the Ministries?

A: Yes. Correction: No. I am treated as an independent contractor.

(Ex. 1, 15:17-18.) (Ex. 2, 2.)

Q: Do you get a W2?

A: Yes. Correction: No.

(Ex. 1, 6:7-8.) (Ex. 2, 2.)

Q: Okay. Did you fill out a W4 when you were hired by Jessy Dixon Ministries?

A: Yes. Correction: No.

(Ex. 1, 6-7:24-25,1.) (Ex. 2, 2.)

Q: Now I'm really confused. When we talked earlier you said you were the only employee?

A: Yes. I don't know what Mitchell is considered.

Correction: No. I am treated as an independent contractor. I don't know what Mitchell is considered.

(Ex. 1, 41:11-13.) (Ex. 2, 2.)

### III.  DISCUSSION

Upon receiving Conner's deposition errata sheet, the Estate immediately filed a Rule 7.4 Expedited Non-Dispositive Motion for Other Relief, moving the court for an order striking the

3

deposition corrections. The Estate argues that the Seventh Circuit Court of Appeals' holding in *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383 (7th Cir. 2000), prohibits Conner from changing the substance of her deposition testimony in this manner. Specifically, the Estate argues that Conner's errata sheet contradicts her deposition testimony and therefore amounts to an impermissible change under Seventh Circuit case law. The court agrees that Conner's submitted changes are impermissible under the Seventh Circuit Court of Appeals's interpretation of Fed. R. Civ. P. 30(e), and therefore, the plaintiff's motion to strike will be granted.

Fed. R. Civ. P. 30(e) permits a deponent to "review the [deposition] transcript . . . and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them." Courts vary as to whether and when they will allow a witness to make changes to the substance of her testimony. While some courts narrowly read Rule 30(e) to permit only the correction of typographical and transcriptional errors, *see Thorn*, 207 F.3d at 388-89; *Burn v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1281-82 (10th Cir. 2003), other courts broadly read Rule 30(e) to not only permit changes in substance but to permit even contradictions to deposition testimony, *see Reilly v. TXU Corp.*, 230 F.R.D. 486 (N.D. Tex. 2005); *Glenwood Farms, Inc. v. Ivey*, 229 F.R.D. 34 (D. Me. 2005). The defendants urge this court to broadly interpret Rule 30(e); however, such is not the law in this circuit.

In the Seventh Circuit, "a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Thorn*, 207 F.3d at 389. This blanket rule, however, is not without exception. The law allows consideration of an errata sheet, when construed as a "post-deposition affidavit," in a limited number of circumstances. *Yow v. Cottrell, Inc.*, No. 3:04-cv-888-DRH, 2007

4

WL 2229003, * 4 (S.D. Ill. August 2, 2007). "These 'limited circumstances' are when a post-deposition affidavit (or errata sheet) contradicts prior deposition testimony in order to 'clarify ambiguous or confusing deposition testimony," or when the subsequent conflicting information is 'based on newly discovered evidence.'" *Id.* (citing *Adelman-Tremblay v. Jewel Companies, Inc.*, 859 F.2d 517, 520 (7th Cir. 1988)) (string citation omitted).

The "corrections" submitted by Conner uncontestedly contradict her deposition testimony. She now wishes to testify "No" when she previously testified "Yes," and she wishes now to state that she is an independent contractor hired by Dixon as opposed to his employee. Such changes cannot "plausibly be represented as a correction of an error in transcription, such as dropping a 'not.'" *See Thorn*, 207 F.3d at 389. Therefore, acceptance of Conner's errata sheet is only permissible if the "corrections" fall within an exception to the general rule.

The defendants do not provide the court with adequate "limited circumstances" to warrant a departure from the general rule. First, Conner's corrections are not meant to clarify confusing testimony. To the contrary, her original testimony is exceedingly clear. Nor does Conner assert that her corrections are based on new information. She merely asserts, without explanation, that the corrections are necessary "to correct a misstatement." (Defs.' Br. 3.) A "misstatement" made repeatedly throughout a sworn deposition without an explanation for the same is not a permissible "limited circumstance" that warrants departure from the general rule. Accordingly, Conner's deposition corrections must be stricken.

The defendants argue that *Thorn* does not apply in this instance because the court in *Thorn* "did not address motions to strike depositions changes," but rather, the "court disregarded deposition changes in deciding a motion for summary judgment." (Defs.' Br. 2) (citing *Reilly*, 230 F.R.D. at

5

488.) In the *Thorn* court's analysis of Rule 30(e), however, the court did not limit its interpretation of Rule 30(e) to situations involving motions for summary judgment. The court generally interpreted Rule 30(e) as it applies in all circumstances. The defendants' attempt to distinguish this case from the court's holding in *Thorn* is without avail.

The defendants' comment that "accurate testimony is preferable to inaccurate testimony" is well-received by the court. (*See* Defs.' Br. 3.) However, the court's holding today is neither a finding that Conner fabricated her deposition testimony nor that she fabricated the errata sheet. Regardless of whether, today, Conner believes she is an independent contractor hired by Dixon, it is clear that at the time of the deposition she stated she was Dixon's employee. The deposition transcript accurately depicts what Conner testified to at the time of the deposition. "A deposition is not a take home examination." *Burns*, 330 F.3d at 1282 (citation omitted). The defendants cannot change Conner's testimony without adequate and appropriate explanation.

The Estate also moves the court for relief from the deadline for filing a response to the defendants' Motion for Summary Judgment, inasmuch as the current issue involves testimony to be used in responding to that motion, and further, because the Estate requested certain documents from the defendants that have not yet been received. Because the defendants do not oppose the plaintiff's request for such relief, such relief will be granted as well.

**NOW THEREFORE IT IS ORDERED** that the Estate's Rule 7.4 Non-Dispositive Motion to Strike Deposition Corrections be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the Estate's response to the defendants' Motion for Summary Judgment shall be filed on or before January 14, 2008, and any reply thereto shall be filed on or before January 29, 2008.

6

**SO ORDERED** this 12th day of December 2007, in Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge